CUYAHOGA COUNTY BAR ASSOCIATION *v.* KING.

[Cite as *Cuyahoga Cty. Bar Assn. v. King,*
106 Ohio St.3d 102, 2005-Ohio-3955.]

(No. 2004–2141—Submitted March 2, 2005—Decided August 17, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Michael Leonard King, last known address in Independence, Ohio, Attorney Registration No. 0031364, was admitted to the practice of law in Ohio in 1984. On April 6, 2004, relator, Cuyahoga County Bar Association, charged respondent in an amended complaint with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, which the board adopted.

{¶ 2} Respondent did not appear at the hearing and his whereabouts are unknown. Before he disappeared, however, respondent filed answers to relator's complaints either on his own behalf or through counsel. He also participated in prehearing conferences, the last of which included a postponement of the scheduled hearing date to permit respondent to retain new counsel. Relator later attempted to depose respondent, but he did not appear, and relator has since been unable to find him.

### Misconduct

{¶ 3} The complaint, as amended, charged seven counts of professional misconduct. Relator withdrew Count I, and the panel unanimously dismissed Counts II and III. The panel also dismissed alleged violations of DR 9–102(A)(2) (requiring a lawyer to maintain client funds in a separate, identifiable bank account) in Counts VI and VII. We therefore review the remaining allegations in Counts IV through VII.

*Count IV*

{¶ 4} Around September 1, 2000, respondent agreed to represent a client in an age-discrimination claim. On that day, the client paid respondent $1,500 by

check. The client thought that respondent had taken the case on a contingent-fee basis, entitling respondent to one-third of any award. The client, however, did not receive a written fee agreement confirming that he had paid $1,500 to respondent as an advance on expenses or as a retainer fee.

{¶ 5} Respondent filed an age-discrimination complaint on the client's behalf. Respondent later discovered that the client had also filed an age-discrimination claim with the Ohio Civil Rights Commission ("OCRC") before filing with the federal Equal Employment Opportunity Commission. According to undated correspondence from respondent, the terms under which the client filed his OCRC claim barred the client from suing in any other forum. After the client's employer moved for summary judgment, respondent filed a notice of dismissal without prejudice, rather than respond.

{¶ 6} In an October 1, 2001 letter, respondent informed his client that he had "pulled back" on the age-discrimination claim "briefly" to explore other theories of liability. The client's attempts to contact respondent were unsuccessful. Respondent eventually referred the client to another attorney. Respondent never provided an accounting for the $1,500 to the client.

{¶ 7} From the foregoing facts, the board and panel found clear and convincing evidence that respondent had violated DR 9–102(B)(3) (requiring a lawyer to maintain complete records of and appropriately account for client funds).

*Count V*

{¶ 8} As to Count V, the panel and board found that respondent had failed to cooperate in relator's investigation of Count IV, a violation of Gov.Bar R. V(4)(G), and had also failed to update his address on file with the Attorney Registration Office, a violation of Gov.Bar R. VI(1)(D). Evidence established that respondent replied twice to one investigator's letters of inquiry, although his letters were undated and referred only to a post office box as his address. Another investigator assigned to respondent's case was unable to contact him at all despite repeated efforts. In June 2003, this investigator specifically notified respondent in writing that he had tried to call several times and offered respondent a final chance to respond. Respondent did not reply, and it was clear that he was no longer accepting mail at the registration address on file for him.

*Count VI* °

{¶ 9} A second client retained respondent to file a personal bankruptcy for her, paying his fee of $800 in installments from January 2002 through April 2002. The client testified that she thought the bankruptcy would be filed within 30 days after she paid his fee, but respondent never filed the bankruptcy. For months, the client tried to contact respondent but was able to speak only with his secretary. Respondent's secretary told the client that the client would receive

papers in the mail, but the client never did. After a year, during which the client repeatedly tried to contact respondent, the client went to his office. A receptionist who worked for another lawyer in the building told the client that they had not seen respondent in "a while."

{¶ 10} The client filed a grievance against respondent, and respondent again failed to cooperate in the ensuing investigation. Respondent advised the investigator that he intended to refund this bankruptcy client's money; however, he did not answer questions about her case. Sometime after the grievance, the client received an $800 money order from respondent with an apology for any inconvenience she may have experienced. The client later hired a new attorney to file her bankruptcy claim.

{¶ 11} From the foregoing facts, the panel and board found clear and convincing evidence that respondent had violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting a legal matter) and Gov.Bar R. V(4)(G).

*Count VII*

{¶ 12} A third client retained respondent to administer the estate of her aunt, who died in 2002. Respondent opened the estate in November of that year in the Cuyahoga County Probate Court, paying $200 in court costs with his own money. His $200 check was returned for insufficient funds, and this amount was later paid by the estate. Respondent later paid himself $5,000 from the estate assets without having the approval of the court, the beneficiaries, or his client.

{¶ 13} Respondent eventually stopped returning his client's calls about the estate, and she reported this problem to the probate court. The probate court administrator advised her to obtain new counsel, which she did. The new attorney for the estate also attempted to contact respondent, but by then, respondent's telephone had been disconnected. Respondent also did not respond to the new attorney's letters asking for respondent's return of $5,200 to the estate.

{¶ 14} In February 2003, the successor attorney filed a grievance against respondent. After relator's investigator contacted him, respondent sent back an undated letter advising that he was forwarding a bank check for $5,200 to the new attorney for the aunt's estate. Respondent did not, however, answer the investigator's questions about his representation of the estate. Another investigator later searched for respondent but could not determine his whereabouts.

{¶ 15} From the foregoing facts, the panel and board found clear and convincing evidence that respondent had violated DR 1–102(A)(6) (barring conduct that adversely reflects on fitness to practice law) and Gov.Bar R. V(4)(G) and VI(1)(D).

## Sanction

{¶ 16} In recommending a sanction for this misconduct, the panel and board considered the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In mitigation, both found that respondent had no record of prior discipline and that he had fully reimbursed the estate in Count VII. The panel and board found that respondent had also returned $800 to the client in Count VI. Moreover, in September 2003, respondent had voluntarily contacted the Ohio Lawyers Assistance Program ("OLAP") for help. BCGD Proc.Reg. 10(B)(2)(a), (c), and (g).

{¶ 17} After behavioral screening, Paul A. Caimi, the OLAP associate director, determined that respondent would benefit from the OLAP program. At the panel hearing, Caimi testified that respondent had been diagnosed with dysthymia, a low-level depression. On September 26, 2003, respondent entered into an OLAP contract providing for treatment of his condition.

{¶ 18} Respondent agreed to have Caimi monitor his progress. Respondent cooperated at first, but later, Caimi lost contact with him. Caimi testified that despite his efforts, he had not spoken with respondent since February 2004. Caimi also testified that he believed that respondent had lost a family member, perhaps a parent, sometime in the months before he contacted OLAP.

{¶ 19} As aggravating conduct, the board found that respondent had not cooperated in the investigations of his misconduct and had not made restitution to the client in Count IV. BCGD Proc.Reg. 10(B)(1)(e) and (i).

{¶ 20} Relator advocated an indefinite suspension. In his answer to the amended complaint, respondent asked that relator's complaint be dismissed. The panel recommended that respondent be indefinitely suspended from the practice of law, and the board adopted that recommendation. The panel and board further recommended that, in addition to the requirements of Gov.Bar R. V(10) for petitions for reinstatement, respondent be required to show that he has successfully fulfilled the terms of his OLAP contract and has repaid $1,500 to the client in Count IV.

{¶ 21} We agree that respondent violated DR 1–102(A)(6), 6–101(A)(3), and 9–102(B)(3) and Gov.Bar R. V(4)(G) and VI(1)(D), as found by the board. Moreover, because we ordinarily impose an indefinite suspension for neglect and the failure to cooperate, *Disciplinary Counsel v. Treneff,* 104 Ohio St.3d 336, 2004–Ohio–6562, 819 N.E.2d 695, ¶ 16, we also accept the board's recommendation.

{¶ 22} Respondent is indefinitely suspended from the practice of law in Ohio. Upon any petition for reinstatement he files, respondent shall be required to

show, in addition to the requirements of Gov.Bar R. V(10), that he has successfully fulfilled the terms of his OLAP contract and has repaid $1,500 to the client in Count IV. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Ellen Mandell, Bar Counsel; McDonald Hopkins Co., L.P.A., and Steven L. Gardner; and Blaise Giusto, for relator.